IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JTH TAX, INC. d/b/a
LIBERTY TAX SERVICE,

    Plaintiff,

v.                                                  CIVIL ACTION NO. 2:15CV345

DANIEL OLIVO

    Defendant.

*MEMORANDUM OPINION AND ODER*

Before the Court is JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty")'s Motion for Default Judgment against Daniel Olivo ("Defendant") pursuant to Federal Rule of Civil Procedure 55(b)(2). The court held a hearing on this matter on January 26, 2016, at which Defendant failed to appear. For the reasons stated below, Plaintiff's Motion for Default Judgment is **GRANTED**. It is **ORDERED** that judgment be entered on behalf of Plaintiff.

### I. PROCEDURAL AND FACTUAL HISTORY

On October 29, 2010, Defendant entered into a Franchise Agreement ("the Agreement") with Liberty for the territory ("The Territory") known as the area:

> SOUTH of & excluding 1-90 from US-11 to Kinne St. WEST of& excluding Kinne St from 1-90 to Exeter St. NORTHWEST of & excluding Exeter St from Kinne St to James St. NORTH of & including James St continuing NORTHWEST of & including James St from Exeter St to US-11. NORTHEAST of & including US-11 continuing SOUTHEAST of & including US-11 from James St to 1-90.

ECF No. 1. Defendant signed the Agreement as the Sole Proprietor and operated his Liberty franchise office at 3009 James Street, Syracuse, NY 13206.

1

The Agreement includes a provision requiring Defendant to make royalty payments in an amount representing 14% of gross receipts and a provision requiring Defendant to pay an advertising fee of 5% of the gross receipts for each month. Sections 9 and 10 of the Agreement contain the following post-termination duties:

> Remove all Liberty signs from all of your offices and other premises; and Stop identifying yourself as a Liberty Tax franchisee, never hold out as a former Liberty Tax franchisee and cease, and not thereafter commence, use of any of the Marks or any marks which are likely to be confused with the Marks; and Stop using all literature received from us and other items bearing the Marks; and Pay to us all amounts owing to us, whether related to the Territory or not; and Transfer to us all telephone numbers, listings and advertisements used in relation to the Franchised Business and deliver to us copies of such documents of transfer; and Deliver to us all copies, including electronic copies, of lists and other sources of information containing the names of customers who patronized the Franchised Business; and Deliver to us all customer tax returns, files, records and all copies thereof; and Deliver to us the copy of the Operations Manual and any updates which we loaned to you; and Cancel all fictitious name listings which you have filed for use of any of the Marks; and Adhere to the provisions of the post-term covenants not to compete and not to solicit and any other covenant herein that requires performance by you after you are no longer a franchisee.

*Id.*

Additionally, the Agreement contains a covenant not to compete which prohibits Defendant from directly or indirectly preparing or filing income tax returns or from offering bank products within the Territory or within twenty-five miles of the Territory granted by the Agreement for a period of two years following the termination of the Agreement. Finally, Section 10 also contains a covenant not to solicit any of Defendant's former customers for a two year period after termination. *Id.*

On October 29, 2010, Defendant a executed Promissory Note in the amount of $30,000.00 to finance the operation of the franchise office and for operating capital. The terms of the Promissory Note require that "any default in the payment of any installment or payment of

principal, interest or other amounts due and payable" constitutes a default. Upon default Liberty, at its election shall accelerate the remaining balance and it shall become immediately due.

On April 23, 2015, Liberty terminated the Agreement due to multiple breaches, including, but not limited to, Defendant's failure to submit reports, failure to use the software provided by Liberty, failure to maintain required business hours and failure to pay amounts owed to Liberty. After termination, Defendant retained Plaintiff's signs at his office, continued to identify himself as a Liberty franchisee, continued to use items from Liberty bearing Plaintiff's marks, retained his former Liberty phone numbers, retained all copies of customer information, lists, tax returns, files and records, retained the Liberty operations manual, and failed to comply with the non-competition and non-solicitation covenants. *Id.*

On May 15, 2015, Liberty sent Defendant a cease-and-desist letter demanding compliance with his post-termination duties. Defendant received the cease-and-desist letter on May 18, 2015. *Id.* Defendant did not respond the cease-and-desist letter and on or about June 3, 2015, Liberty sent Defendant a Notice of Intent to Sue for breach of the Agreement and included copies of Plaintiff's federal trademark registrations. *Id.*

On May 15, 2015, Liberty hired a private investigator (P.LB. Investigations) to determine whether Defendant was complying with the Agreement's post-termination duties and covenants. As of June 16, 2015, the signage in front of Defendant's office displayed "Liberty Tax Service" and there were multiple Lady Liberty pictures and statues displayed. *Id.*

As of July 30, 2015, the date on which the complaint was filed, Defendant had $261.92 in accounts receivable for royalty and advertising fees over 30 days past due. Additionally, Defendant has failed to pay the amounts currently due on the royalty and advertising fees and the

promissory note with an outstanding balance of $8,547.07. This includes any interest through April 27, 2015. *Id.*

On August 14, 2015, the complaint was served on Defendant and he had until September 4, 2015 to file a responsive pleading. *Id.* Defendant did not file a responsive pleading. On October 8, 2015 Liberty requested an Entry of Default which the Clerk granted on the same day. ECF No. 5. On October 14, 2015 Liberty filed a Memorandum in Support of the Motion for Default Judgement. ECF No. 8. On January 26, 2016 the court held a hearing on Plaintiff's Motion. Defendant failed to appear. During the hearing, Plaintiff's counsel represented that the Defendant had discontinued operation of his business, however the signage in front of Defendant's office displayed "Liberty Tax Service" and there were still Lady Liberty pictures and statues displayed.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure require the clerk to enter default against a party from whom affirmative relief is sought when that party has "failed to plead or otherwise defend" its case. Fed.R.Civ.P. 55(a). When a plaintiff's claim is not for a sum certain, as in this case, the plaintiff must apply to the Court for default judgment, and if the party against whom the judgment is sought has appeared previously, that party must be served with written notice at least seven days prior to any hearing. Fed.R.Civ.P. 55(b)(2). Further, Rule 55(b)(2) provides that:

> The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:
> (A) conduct an accounting;
> (B) determine the amount of damages;
> (C) establish the truth of any allegation by evidence; or
> (D) investigate any other matter.

"Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not." *S.E.C. v. Lawbaugh*, 359 F.Supp.2d 418, 422 (D.Md.2005). A plaintiff's complaint is well-pleaded under the Federal Rules of Civil Procedure when it "contains sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Default judgments are to be granted sparingly, with consideration to be given to, among other factors, the question of whether a less severe sanction would suffice. *See, e.g., Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 953–54 (4th Cir.1987); *United States v. Moradi*, 673 F.2d 725, 727–28 (4th Cir.1982). The Court is certainly mindful of the Fourth Circuit's strong preference that defaults be avoided and claims disposed of on their merits. *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir.2010) (citing *Tazo, Inc. v. Director, Office of Workers Comp. Program, U.S. Dep't of Labor*, 895 F.2d 949, 950 (4th Cir.1990); *Consolidated Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251 (4th Cir.1967)). When a district court enters default judgment, however, the decision is committed to the sound discretion of the court and shall be reviewed only for abuse of discretion. *Lolatchy*, 816 F.2d at 953–54.

Because a default judgment order may dispose of a matter, the Court must first satisfy itself that it has jurisdiction over the case. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) ("First, 'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.' Moreover, courts ... have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." (citations omitted)); *In re Kirkland*, 600 F.3d 310, 315 (4th Cir.2010) ("Subject

5

matter jurisdiction cannot be forfeited or waived, and can be raised by a party, or by the court sua sponte, at any time prior to final judgment."). A plaintiff may bring suit in federal court only if the matter involves a federal question arising "under the Constitution, laws or treaties of the United States," 28 U.S.C. § 1331, or if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different States." 28 U.S.C. § 1332(a)(1).

## III. DISCUSSION

### A. Accounts Receivable and Breach of Franchise Agreement

Defendant has failed to pay the amounts currently due on the royalty and advertising fees and the promissory note with an outstanding balance of $8,547.07.

The Agreement contained a consent to jurisdiction clause in favor of Virginia as well as a forum selection clause indicating that venue in Virginia is proper. *Id.* Under Virginia law, a party breaches a contract if "without legal excuse [it] fails to perform an obligation in a timely manner." Va.Code.Ann § 59.1–507.1(a). Here, Defendant has breached the franchise Agreement by: failing to submit reports, failing to use the software provided by Liberty, failing to maintain required business hours and failing to pay amounts owed to Liberty. Additionally, Defendant has breached the post-termination covenants by: retaining the Liberty signs at his office, continuing to identify himself as a Liberty franchisee, continuing to use items from Liberty bearing Plaintiff's marks, retaining his former Liberty phone numbers, retaining all copies of customer information, lists, tax returns, files and records, retaining the Liberty operations manual, and failing to comply with the non-competition and non-solicitation covenants. Since no valid legal excuse has been provided to date, Defendant has breached the franchise Agreement and the post-termination covenants.

## B. Injunctive Relief

"An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). A plaintiff seeking a permanent injunction must satisfy a four-factor test before the court may grant this type of relief. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). In order to prevail, plaintiff must show: (1) it has suffered an irreparable injury; (2) legal remedies are inadequate to compensate for that injury; (3) after balancing the hardships of the plaintiff and defendant, a remedy in equity is necessary; and (4) that the public interest would not be harmed by a permanent injunction. *Id.*

### a. Irreparable Injury

In this Circuit, "when the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied." *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994), *abrogated on other grounds by Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 12(2008). Here, Defendant's continued breach of the covenants not to compete and not to solicit threaten Plaintiff's customer base and goodwill with their customers. Defendant continues to profit from customer lists, operations manual, and the use of Plaintiff's marks, to the detriment of Liberty. This causes additional harm because it also threatens Plaintiff's relationship with all their other franchisees. Finally, without an injunction, Defendant would be able to continue his breach thereby requiring Liberty to initiate litigation again. Therefore, the Court finds that Defendant's actions constitute an irreparable injury.

### b. Inadequate Legal Remedies

The irreparable harm and the inadequacy of legal remedies factors generally go "hand-in-hand", since a court must determine whether the party seeking an injunction has demonstrated an "irreparable injury" for which a legal remedy is inadequate. *Vollette v. Watson*, 978 F. Supp. 2d 572, 583 (E.D. Va. 2013). It is difficult to calculate and quantify the potential loss of customers and goodwill and as such, the only sufficient remedy would be a permanent injunction. *Toolchex, Inc. v. Trainor*, No. 3:08-CV-236, 2009 WL 2244486, at *2 (E.D. Va. July 24, 2009); *JTH Tax, Inc. v. Geraci*, No. 2:14-CV-236, 2014 WL 4955373, at *8 (E.D. Va. Oct. 2, 2014) ("No amount of damages can quantify the potential loss to Plaintiff's goodwill and its reputation, and failure to enforce the non-compete could send a dangerously damaging signal to other franchisees.").

Here, it is difficult to calculate a potential loss of customers as there is no way to know the exact number of customers that have been or will be lost. Additionally, Defendant continued to operate his business despite numerous notices to stop which indicated that he likely had no intention of stopping. The continued operation in breach of the Agreement and the inability to quantify the potential loss of business to Liberty satisfies the irreparable injury requirement. Therefore, it appears that there is no other sufficient remedy other than injunctive relief that would prevent Defendant from continuing his breach.

### c. Balance of Hardships

This factor requires the court to balance "the harm to the plaintiff's business interests as compared to the harm to the defendant's financial well-being." *JTH Tax, Inc. v. Lee*, 514 F. Supp. 2d 818, 826 (E.D. Va. 2007). Although the permanent injunction will prevent Defendant from working in a tax preparation business within the specified area for two years,

the court would simply be enforcing Defendant's contractual obligations. *Id.* at 825. Defendant is able to operate a tax preparation business outside of the specified area or operate any other type of business not relating to bank products. However, without the injunction Liberty is under not only a constant threat of competition from Defendant, but as the facts indicate, Liberty is actually suffering from the competition as the private investigator hired by Liberty confirmed that Defendant continues to use Liberty marks.

### d. Public Interest

Enforcement of a valid non-compete clause aids public interest by "preventing consumer confusion" and "requiring parties to value the sanctity of contract." *Lee*, 514 F. Supp. 2d at 826; *Geraci*, 2014 WL 4955373, at *8. Therefore, this factor weighs in favor of the injunction.

Having considered all four of the injunction factors, the Court finds that Plaintiff has met its burden and a permanent injunction is appropriate.

## IV. CONCLUSION

Plaintiff's Motion for Default Judgment against Defendant Olivo, is **GRANTED**. It is **ORDERED** that judgment be entered on behalf of Plaintiff and against Defendant. A permanent injunction Order will be issued in a separate document.

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to the parties. The Order shall be sent to Defendant at Olivo's previous address of record.

**IT IS SO ORDERED.**

Norfolk, Virginia
February /2, 2016

Raymond A. Jackson
United States District Judge